Jose M. DeCastro
5350 Wilshire Blvd
PO Box 36143
L.A., CA 90036

9589 0710 5270 3455 2452 69

CERTIFIED MAIL

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE




UNITED STATES
POSTAL SERVICE

RDC 99

73533

FCM LETTER
LOS ANGELES, CA 90036
MAR 27, 2026
$5.88
S2324K503529-67



Suzannah Smith
c/o Duncan Police Department
100 S. 7th Street
Duncan, OK 73533



FOREVER / USA

EXHIBIT 4

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF OKLAHOMA

JOSE MARIA DeCASTRO,

Plaintiff,

v.

CITY OF DUNCAN, OKLAHOMA;

SUZANNAHE SMITH, in her individual and official capacities;

CONNOR NEWMAN, in his individual and official capacities;

WILLIAM FITZHUGH, in his individual and official capacities;

BRIAN ATTAWAY, in his individual and official capacities;

DAVID HAMMOND, in his individual and official capacities;

DAN JACOBSMA, in his individual and official capacities;

DOES 1-10, inclusive,

Defendants.

Case No. 5:26-cv-00027

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

(42 U.S.C. Section 1983)

DEMAND FOR JURY TRIAL

Plaintiff Jose Maria DeCASTRO, proceeding pro se, brings this First Amended Complaint under 42 U.S.C. Section 1983 for violations of his rights secured by the First and Fourth Amendments to the United States Constitution. Plaintiff amends as of right pursuant to Federal Rule of Civil Procedure 15(a)(1) to add Dan Jacobsma as a named Defendant.

NATURE OF THE ACTION

1. On September 8, 2025, Plaintiff Jose Maria DeCASTRO, a journalist, traveled to Duncan, Oklahoma to investigate reports of officer misconduct. During that visit, he observed and documented unsecured AR-15 rifles in multiple police department vehicles parked in a publicly accessible lot. He reported those findings to a senior officer. The next day, police officials prepared a criminal affidavit targeting him for that activity.

2. Officials held that affidavit without filing for three months. In October 2025, Mr. DeCASTRO submitted public records requests regarding a separate incident involving a mentally ill detainee

EXHIBIT 4

and a potential conflict of interest involving the City Attorney. Two months later, officials filed criminal charges using the three-month-old affidavit.

3. The Information was filed in Stephens County District Court as Case No. CM-2025-00530. It charges three counts under 21 O.S. Section 1787 based on Mr. DeCASTRO pulling door handles on three locked patrol vehicles. No vehicle was entered. No property was damaged. The affidavit omits that Mr. DeCASTRO identified himself as a journalist, explained his purpose to department leadership, and received no instruction to leave.

4. An active arrest warrant remains outstanding. Mr. DeCASTRO cannot enter Oklahoma without risk of arrest. His ability to report on law enforcement in the region is suppressed. The state court has not ruled on any of Plaintiff's pending motions, including a motion for judicial recusal filed January 20, 2026, which has received no response. This action seeks relief from those ongoing injuries.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. Sections 1331 and 1343. This action arises under 42 U.S.C. Section 1983 and the First and Fourth Amendments to the United States Constitution.

6. This Court has supplemental jurisdiction under 28 U.S.C. Section 1367.

7. Venue is proper in the Western District of Oklahoma under 28 U.S.C. Section 1391(b)(2). A substantial part of the events giving rise to these claims occurred in Stephens County, Oklahoma. Case No. CM-2025-00530 is pending in Stephens County District Court.

8. This action was originally filed in the Central District of California and transferred to this Court pursuant to 28 U.S.C. Section 1404(a).

9. This Court has authority to grant prospective injunctive relief against state officers, including District Attorney Dan Jacobsma, who act in violation of federal constitutional rights. Ex parte Young, 209 U.S. 123 (1908). The ongoing prosecution creates a continuing chilling effect on constitutionally protected newsgathering. It carries an active threat of arrest and imprisonment. The state court has not ruled on any pending motion filed by Plaintiff, including motions filed as early as January 9, 2026. Plaintiff's motion for judicial recusal of the presiding judge, filed January 20, 2026, has received no response. These circumstances demonstrate that the state forum has not yet provided a meaningful opportunity to raise these federal constitutional claims. Monetary damages alone cannot remedy these injuries. Elrod v. Burns, 427 U.S. 347, 373 (1976).

## PARTIES

Plaintiff

10. Plaintiff JOSE MARIA DeCASTRO is a 51-year-old journalist and First Amendment auditor residing in Los Angeles, California. He operates the Delete Lawz YouTube channel with approximately 679,000 subscribers and 10 million monthly views. His work focuses on police accountability, constitutional rights education, and government transparency through auditing practices recognized by federal courts as protected speech.

Defendants

11. Defendant SUZANNAHE SMITH is a Duncan Police Department detective. She signed the September 9, 2025 probable cause affidavit. She is sued individually and officially. At all times relevant, she acted under color of state law.

EXHIBIT 4

12. Defendant CONNOR NEWMAN is a Duncan Police Department detective. His vehicle, bearing plate PYA020, was among those Mr. DeCASTRO photographed on September 8, 2025. He participated in the decision to seek charges. He is sued individually and officially.

13. Defendant WILLIAM FITZHUGH is a Duncan Police Department lieutenant. His vehicle, bearing plate QHB922, was among those Mr. DeCASTRO photographed. He participated in the decision to seek charges. He is sued individually and officially.

14. Defendant DAVID HAMMOND is the City Attorney for Duncan, Oklahoma. Upon information and belief, Hammond simultaneously represents Anthony Lee McAdams in criminal proceedings while also serving as attorney for the municipality whose officers arrested Mr. McAdams. He participated in, approved, or ratified the decision to pursue charges against Mr. DeCASTRO in retaliation for investigating that conflict. He is sued individually and officially.

15. Defendant BRIAN ATTAWAY is the Chief of the Duncan Police Department. He is sued individually and officially for implementing, ratifying, and failing to prevent the unconstitutional policies and customs described herein.

16. Defendant DAN JACOBSMA is the District Attorney for District 6, State of Oklahoma. His office is located at the Jackson County District Attorney's Office, 101 North Main Street, Altus, OK 73521. He is responsible for Case No. CM-2025-00530 in Stephens County District Court. He has full authority to continue or dismiss the charges against Plaintiff. He acts under color of state law. He is a proper defendant for prospective injunctive relief under Ex parte Young, 209 U.S. 123 (1908), as the state officer with active administrative authority over the prosecution Plaintiff seeks to enjoin. He is sued in his individual capacity for conduct falling outside the scope of core prosecutorial advocacy, including: (a) administrative decisions made in connection with a prosecution that, upon information and belief, lacked proper authorization at the time the underlying affidavit was sworn; (b) failing to investigate and remedy the authorization questions raised by Plaintiff's filings; and (c) failing to take any administrative action in response to notice of substantial First Amendment retaliation evidence. These acts and omissions are administrative in nature and are not shielded by absolute immunity. Kalina v. Fletcher, 522 U.S. 118, 129-30 (1997).

17. Defendant CITY OF DUNCAN, OKLAHOMA is a municipal corporation liable under Monell v. Department of Social Services, 436 U.S. 658 (1978).

18. Defendants DOES 1-10 are individuals whose identities are unknown but who participated in the violations alleged herein.

## FACTUAL ALLEGATIONS

I. First Amendment Auditing as Protected Journalism

19. First Amendment auditing is a form of citizen journalism. It tests government compliance with constitutional rights, including the right to photograph and observe government operations in public spaces. Federal courts recognize it as protected speech and newsgathering. Irizarry v. Yehia, 38 F.4th 1282 (10th Cir. 2022); Glik v. Cunniffe, 655 F.3d 78, 82 (1st Cir. 2011).

20. The protection extends to investigating government conduct, gathering information about official activity, and reporting findings to the public. Branzburg v. Hayes, 408 U.S. 665, 681 (1972).

II. The Heather Chandler Investigation

EXHIBIT 4

21. Before September 8, 2025, Mr. DeCASTRO received reports that Officer Darius McReynolds had subjected Heather Chandler to pretextual traffic stops on three occasions within three months.

22. During one stop, McReynolds pulled Ms. Chandler over on her bicycle and claimed she had put her feet down instead of using brakes. Mr. DeCASTRO later obtained McReynolds' dash camera footage. The footage contradicted that justification. Ms. Chandler had not put her feet down.

23. Mr. DeCASTRO traveled to Duncan to investigate this conduct and to document his findings for public reporting.

III. September 8, 2025: The Investigation

24. On September 8, 2025, Mr. DeCASTRO arrived at the Duncan Police Department, located at 100 S. 7th Street. The department maintains a public parking lot adjacent to its facilities. The lot was open to the public. No signs restricted access or prohibited photography.

25. While in the lot, Mr. DeCASTRO observed unsecured AR-15 rifles lying in plain view inside patrol vehicles. The vehicles bore plates PYA020 (Detective Newman), QHB922 (Lt. Fitzhugh), and PLX241 (Detective Smith). The rifles were not secured in gun locks or locked compartments.

26. Mr. DeCASTRO documented these observations through photographs and video. He tested whether the vehicle doors were locked by attempting to open them. All vehicles were locked. He did not enter any vehicle, touch any interior property, or cause any damage.

27. Lori Adams, a civilian employee of the Duncan Police Department, approached Mr. DeCASTRO's colleague and demanded she stop photographing. The Tenth Circuit has held that the First Amendment protects the right to record the police. Irizarry v. Yehia, 38 F.4th 1282, 1295 (10th Cir. 2022).

28. Mr. DeCASTRO then met with Major Woods. He reported the unsecured firearms. Major Woods acknowledged the department preferred officers use AR-15 locks but stated that unsecured firearms in locked vehicles fell within policy. Major Woods did not suggest Mr. DeCASTRO had committed any offense. He did not ask him to leave.

IV. September 9, 2025: The Affidavit

29. On September 9, 2025, one day after Mr. DeCASTRO's investigation, Detective Smith signed a probable cause affidavit seeking his arrest. The affidavit describes conduct that is constitutionally protected: walking through a public parking lot, photographing vehicles, looking through windows, testing door handles to verify security measures, and remaining in publicly accessible areas.

30. The affidavit alleges violation of 21 O.S. Section 1787, which governs loitering in, injuring, or molesting motor vehicles. The statute requires entering a vehicle or manipulating its controls. The affidavit itself acknowledges all vehicles remained locked. No entry occurred. No mechanisms were manipulated.

V. The Lori Adams Notarization

31. The September 9 affidavit was notarized by Lori Adams. She is the same employee who had confronted Mr. DeCASTRO's colleague the previous day. Oklahoma law requires notaries to act as impartial witnesses and prohibits notarization where the notary has a beneficial interest. 49 O.S. Section 1(A). Adams was employed by the prosecuting agency and had demonstrated personal

EXHIBIT 4

involvement in the events at issue the day before. These circumstances raise serious questions about whether her notarization satisfied Oklahoma's impartiality requirements.

## VI. The Three-Month Hold

32. Defendants did not file charges on September 9. They held the notarized affidavit for three months without action.

## VII. The McAdams Investigation

33. In October 2025, Mr. DeCASTRO investigated the June 20, 2024 arrest of Anthony Lee McAdams. Public records reflected that officers deployed baton strikes and a K9 against Mr. McAdams during what appeared to be a mental health crisis. He was processed criminally rather than receiving psychiatric care.

34. Upon information and belief, David Hammond serves simultaneously as City Attorney for Duncan and as legal counsel for Mr. McAdams in criminal proceedings arising from that arrest. Mr. McAdams had received a substantial inheritance exceeding $120,000. Mr. DeCASTRO's investigation raised questions about the management of those assets and the nature of Hammond's divided representation.

35. On October 4, 2025, Mr. DeCASTRO submitted public records requests for arrest records, body camera footage, and evidence logs related to Mr. McAdams. Seeking government records through established channels is protected First Amendment activity. McBurney v. Young, 569 U.S. 221, 234 (2013).

## VIII. December 10, 2025: The Filing

36. On December 10, 2025, two months after the public records requests and three months after the affidavit was prepared, an Information was filed in Stephens County District Court as Case No. CM-2025-00530. The Information charges three counts under 21 O.S. Section 1787 based on Mr. DeCASTRO pulling door handles on three locked patrol vehicles during a documented security investigation. No vehicle was entered. No property was damaged.

## IX. Jacobsma's Administrative Role and Notice

37. Dan Jacobsma is the District Attorney for District 6 and has administrative authority over Case No. CM-2025-00530. He has the power to continue or terminate the prosecution. He has not sought dismissal.

38. Plaintiff provided notice of the constitutional defects through filings in the state court proceeding. Those filings include a Franks motion challenging the sufficiency of the affidavit, a supplemental Franks motion, and a motion identifying questions about the prosecution's authorization chain. Jacobsma has taken no administrative action in response to any of those filings.

39. His administrative inaction in response to that notice, in the face of substantial and documented First Amendment retaliation evidence, reflects either ratification of the retaliatory purpose underlying the charges or deliberate indifference to Plaintiff's clearly established rights.

## X. The Authorization Chain Questions

40. Upon information and belief, the prosecution raises serious questions about the authorization chain underlying the charges. The probable cause affidavit was sworn on September 9, 2025. Upon information and belief, documentation reflecting Jacobsma's authorization to prosecute matters in

EXHIBIT 4

Stephens County was not obtained until significantly later. The AG authorization letter, upon information and belief, bears a postmark of January 20, 2026, which is the same date Plaintiff filed his Supplemental Franks Motion.

41.  These facts, if borne out in discovery, raise questions whether authorization documentation was secured before administrative decisions about this prosecution were made. Administrative conduct in connection with a prosecution that lacked proper authorization at its inception falls outside the core prosecutorial function and is not shielded by absolute immunity. Kalina v. Fletcher, 522 U.S. 118, 129-30 (1997).

## XI. The State Court's Failure to Act

42.  Plaintiff has filed multiple motions in Case No. CM-2025-00530, including a motion for a Franks hearing filed January 9, 2026, a supplemental Franks motion filed January 20, 2026, and a motion for judicial recusal of the presiding judge also filed January 20, 2026. As of the date of this filing, the state court has not yet ruled on any of these motions and has not acknowledged the recusal request. A proposed order for dismissal of the warrant, submitted on February 13, 2026, has received no ruling. The state court's failure to act on any pending motion demonstrates that the state forum has not yet provided a meaningful opportunity to raise these federal constitutional claims.

## XII. The Charges Lack Probable Cause

43.  Oklahoma Statute 21 O.S. Section 1787 requires: (1) entering a vehicle with intent to commit a crime; (2) climbing into or upon a vehicle; (3) attempting to manipulate vehicle controls; or (4) setting a vehicle in motion. None of these elements are met here.

44.  Testing whether a door handle opens does not reasonably fall within the statute's meaning of attempting to manipulate vehicle controls. The statute addresses engagement with starting mechanisms and operational controls, not exterior door handles.

45.  The statute also requires intent to commit a crime at the time of the act. Mr. DeCASTRO identified himself to Major Woods, stated his purpose, and reported his findings openly. No criminal intent was present.

46.  The affidavit omits facts material to probable cause: Mr. DeCASTRO's identity as a journalist, his stated purpose, his report to Major Woods, the public nature of the lot, and the absence of any criminal intent. A magistrate presented with the complete picture could not find probable cause. Franks v. Delaware, 438 U.S. 154 (1978).

## XIII. Municipal Liability Predicates

47.  The violations at issue reflect established policies and customs of the City of Duncan. Lori Adams confronted Mr. DeCASTRO's colleague on September 8 and notarized the affidavit on September 9 despite her involvement in the events at issue. Officials prepared charges within one day of the investigation and held them for three months. Charges were filed after public records requests targeting a matter involving the City Attorney. McReynolds had engaged in a documented pattern of pretextual traffic stops. Major Woods acknowledged that unsecured firearms in patrol vehicles was within departmental policy. Hammond's dual representation created a conflict of interest that the department failed to address. The City failed to train personnel on First Amendment rights, the prohibition on retaliatory prosecution, probable cause standards, notary impartiality, and mental health crisis response.

EXHIBIT 4

XIV. Ongoing Harm

48. The harm to Plaintiff is ongoing and irreparable. An active arrest warrant remains outstanding in Case No. CM-2025-00530. Plaintiff cannot enter Oklahoma without risk of arrest. His ability to investigate and report on law enforcement in the region is suppressed. The threat of prosecution and imprisonment continues each day the case remains open. The state court has not acted on any pending motion. These injuries are not compensable by monetary damages alone.

49. The loss of First Amendment freedoms, even for minimal periods, constitutes irreparable injury. Elrod v. Burns, 427 U.S. 347, 373 (1976). Plaintiff's newsgathering activity is chilled by the existence of the outstanding warrant and the active prosecution. The chilling effect is not speculative. It is demonstrated by his inability to travel to Oklahoma and his suppressed investigative reporting on matters of public concern.

CAUSES OF ACTION

COUNT I

FIRST AMENDMENT RETALIATION

42 U.S.C. Section 1983

Against All Defendants

50. Plaintiff incorporates all preceding allegations.

51. A plaintiff establishes First Amendment retaliation under Section 1983 by showing: (1) constitutionally protected activity; (2) a defendant's actions caused injury that would chill a person of ordinary firmness from continuing that activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct. Shero v. City of Grove, 510 F.3d 1196, 1203 (10th Cir. 2007).

52. Protected Activity: Mr. DeCASTRO investigated officer misconduct, photographed vehicles and unsecured firearms in a public lot, tested security measures, reported findings to department leadership, and submitted public records requests about the McAdams case and Hammond's conflict. These activities are protected under the First Amendment. Irizarry v. Yehia, 38 F.4th 1282, 1295 (10th Cir. 2022); Branzburg v. Hayes, 408 U.S. 665, 681 (1972).

53. Chilling Effect: Criminal prosecution, an outstanding arrest warrant, and the threat of imprisonment would chill a person of ordinary firmness from continuing investigative reporting. The warrant currently prevents Plaintiff from entering the state where his investigation was ongoing. This is not speculative. It is an active, concrete injury.

54. Substantial Motivating Factor: Officials prepared the affidavit within one day of the investigation. Lori Adams had personally been involved in the events at issue the day before she notarized that affidavit. Charges were held for three months and filed after public records requests about a matter involving the City Attorney. The conduct alleged in the Information is constitutionally protected. Probable cause was absent. Upon information and belief, authorization documentation for the prosecution was not secured until months after the affidavit was sworn. Jacobsma's administrative inaction in response to notice of these defects further supports the inference that protected activity was a substantial motivating factor.

EXHIBIT 4

55. Even if Defendants assert a non-retaliatory basis for the charges, no probable cause existed and the conduct alleged satisfies no element of the charged statute. Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274 (1977).

56. The right to record and investigate police conduct in public was clearly established in the Tenth Circuit by September 2025. Irizarry, 38 F.4th at 1295. The prohibition on retaliatory prosecution was clearly established. Nieves v. Bartlett, 587 U.S. 391 (2019); Hartman v. Moore, 547 U.S. 250 (2006). No reasonable officer could believe that the conduct at issue was criminal.

57. Defendants are not entitled to qualified immunity. Hope v. Pelzer, 536 U.S. 730 (2002).

58. The City is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), because the retaliation resulted from the policies and customs described herein.

## COUNT II

## FOURTH AMENDMENT - UNLAWFUL SEIZURE THROUGH LEGAL PROCESS

### 42 U.S.C. Section 1983

### Against Smith, Newman, Fitzhugh, Hammond, Attaway, Jacobsma, and City of Duncan

59. Plaintiff incorporates all preceding allegations.

60. Defendants collectively engaged in conduct that deprived Plaintiff of constitutional rights through coordinated actions that lacked a lawful basis. These actions were undertaken under color of state law and resulted in ongoing harm to Plaintiff.

61. Plaintiff has been subjected to an ongoing restraint on his liberty through the active arrest warrant issued in Case No. CM-2025-00530. That warrant was obtained based on an affidavit that omitted material exculpatory information and described conduct satisfying no element of the charged statute. The restraint is not theoretical. Plaintiff cannot enter Oklahoma. His movement is constrained. His professional activities are curtailed. These are concrete Fourth Amendment injuries continuing today.

62. Defendants Smith and Jacobsma each participated in actions that advanced the continued prosecution despite known defects in the underlying affidavit and procedural posture of the case. The state court has taken no action on any pending motion, including the recusal motion filed January 20, 2026, and this inaction contributed to the continuation of proceedings without lawful justification.

63. Jacobsma, with notice of the First Amendment retaliation evidence and the authorization chain questions identified in Plaintiff's state court filings, has taken no administrative action to seek dismissal or address those defects.

64. No probable cause supported the issuance of the warrant or the charges. Probable cause requires facts sufficient to warrant a prudent person in believing the suspect had committed an offense. Gerstein v. Pugh, 420 U.S. 103, 111 (1975). Testing locked door handles during a documented security investigation does not constitute entering a vehicle, manipulating vehicle controls, or any other element of 21 O.S. Section 1787. The affidavit omitted material exculpatory facts. Franks v. Delaware, 438 U.S. 154 (1978). The circumstances surrounding the Adams notarization raise serious questions about whether Oklahoma's impartiality requirements were satisfied.

65. The lack of legitimate purpose is demonstrated by: the temporal sequence from investigation to affidavit in one day; the three-month strategic hold; the filing triggered by public records

EXHIBIT 4

activity; the absence of probable cause; and Jacobsma's administrative inaction despite notice of the constitutional defects.

66. Defendants are not entitled to qualified immunity. Groh v. Ramirez, 540 U.S. 551 (2004).

67. The City is liable under Monell for the policies described herein.

## COUNT III

### MONELL - FAILURE TO TRAIN

### 42 U.S.C. Section 1983

### Against City of Duncan

68. Plaintiff incorporates all preceding allegations.

69. A municipality's failure to train its employees constitutes an actionable policy where that failure amounts to deliberate indifference to the constitutional rights of persons the employees encounter. City of Canton v. Harris, 489 U.S. 378, 388 (1989). Deliberate indifference is established where the need for training is obvious and the failure to train is likely to result in violations. Connick v. Thompson, 563 U.S. 51, 61 (2011).

70. Duncan failed to provide adequate training on: the First Amendment right to record and photograph police activity in public spaces, as clearly established by the Tenth Circuit in Irizarry v. Yehia, 38 F.4th 1282 (10th Cir. 2022); the prohibition on retaliatory law enforcement action; probable cause requirements and the obligation to disclose exculpatory information in affidavits; notary impartiality requirements under Oklahoma law; the handling of public records requests; conflicts of interest; and mental health crisis response.

71. Adequate training would have prevented the violations at issue. Trained personnel would have recognized that Mr. DeCASTRO's conduct was constitutionally protected, that the affidavit lacked probable cause, that Adams's involvement raised impartiality concerns, and that filing charges months after a protected investigation and in response to public records activity constituted retaliation.

72. Deliberate indifference is demonstrated by: the failure to discipline Adams following her September 8 confrontation; the failure to address McReynolds' pattern of pretextual stops; the failure to correct violations after Major Woods received notice of them; tolerance of Hammond's dual representation; and ratification of the retaliatory prosecution.

## COUNT IV

### MONELL - RATIFICATION

### 42 U.S.C. Section 1983

### Against City of Duncan

73. Plaintiff incorporates all preceding allegations.

74. A municipality may be liable under Section 1983 where a final policymaker ratifies an unconstitutional act. Ratification requires actual or constructive knowledge of the unconstitutional conduct and a deliberate choice to endorse it. Bryson v. City of Oklahoma City, 627 F.3d 784, 789 (10th Cir. 2010).

75. Relevant policymakers had knowledge of the conduct at issue. Major Woods received a direct report of the protected activity on September 8 and was aware that Adams had confronted Mr.

EXHIBIT 4

DeCASTRO's colleague. Chief Attaway knew or should have known that charges were being pursued against a journalist based on conduct that had been reported to department leadership without objection. Hammond was aware that the prosecution would forestall investigation into his own conflict of interest. Jacobsma received notice through Plaintiff's state court filings of the First Amendment retaliation evidence and the authorization chain questions.

76. Each of these individuals chose to endorse the prosecution rather than address its constitutional defects. The strategic hold from September 9 through December 10, and the filing timed to follow the McAdams public records requests, required coordination among multiple decision-makers. That coordination reflects an institutional choice, not individual error.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

Declaratory Relief

1. A declaration that Defendants violated Plaintiff's rights under the First and Fourth Amendments to the United States Constitution.

2. A declaration that Information CM-2025-00530 was initiated and has been maintained in violation of the First and Fourth Amendments.

3. A declaration that the September 9, 2025 probable cause affidavit was obtained through material omissions in violation of Franks v. Delaware, 438 U.S. 154 (1978).

4. A declaration that the circumstances surrounding the notarization of the September 9, 2025 affidavit raise serious questions about whether Oklahoma notary impartiality requirements were satisfied.

5. A declaration that the three-month delay between the preparation of the affidavit and the filing of charges, timed to coincide with Plaintiff's public records requests, reflects retaliatory motive.

6. A declaration that Jacobsma's administrative inaction in response to notice of the constitutional defects and First Amendment retaliation evidence identified herein constitutes deliberate indifference to Plaintiff's rights under the First and Fourth Amendments.

7. A declaration that the City of Duncan maintains unconstitutional customs of retaliating against individuals who investigate and report on police misconduct.

Injunctive Relief

8. A temporary restraining order and preliminary injunction, pursuant to Federal Rule of Civil Procedure 65, ordering, based on the constitutional violations alleged herein: (a) that Defendants, including District Attorney Dan Jacobsma, are enjoined from continuing prosecution of Case No. CM-2025-00530; (b) that the arrest warrant issued in connection with that case is stayed and its enforcement enjoined; (c) that all Defendants are prohibited from arresting, detaining, or prosecuting Plaintiff based on his September 8, 2025 conduct; and (d) that all Defendants are enjoined from taking any retaliatory action against Plaintiff in response to his constitutionally protected activity.

9. A permanent injunction, upon final judgment, based on the constitutional violations established herein, making the foregoing temporary relief permanent and additionally requiring: (a) that the City of Duncan adopt written policies protecting the right to observe and photograph police activity

EXHIBIT 4

in public spaces; (b) that Duncan personnel receive training on the First Amendment standards established in Irizarry v. Yehia, 38 F.4th 1282 (10th Cir. 2022); (c) that Duncan adopt written policies prohibiting retaliatory law enforcement action against individuals who submit public records requests; and (d) that Duncan personnel receive training on notary impartiality requirements under Oklahoma law.

**Monetary Relief**

10. Compensatory damages in an amount to be determined at trial for: the ongoing prosecution and active arrest warrant; the threat of imprisonment; chilling of constitutionally protected speech and newsgathering; the effect of the outstanding warrant on Plaintiff's liberty and movement; emotional distress; reputational harm; economic losses attributable to the suppression of Plaintiff's journalism; and expenses incurred in connection with the unconstitutional prosecution.

11. Punitive damages against Defendants Smith, Newman, Fitzhugh, Hammond, Attaway, and Jacobsma in their individual capacities, for conduct undertaken with knowledge of, or reckless disregard for, Plaintiff's clearly established constitutional rights.

**Additional Relief**

12. An award of reasonable costs and attorneys' fees pursuant to 42 U.S.C. Section 1988.

13. Pre- and post-judgment interest as permitted by law.

14. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38.

Dated: March 27, 2026

Respectfully submitted,

/s/ Jose Maria DeCastro
Jose Maria DeCastro, Pro Se
5350 Wilshire Blvd., P.O. Box 36143
Los Angeles, California 90036
Telephone: (310) 963-2445
Email: chille@situationcreator.com

## VERIFICATION

EXHIBIT 4

I, Jose Maria DeCASTRO, declare under penalty of perjury under the laws of the United States that I have read the foregoing First Amended Complaint and that it is true and correct to the best of my knowledge, except as to matters stated on information and belief, which I believe to be true.

Executed on March 27, 2026, at Los Angeles, California.

/s/ Jose Maria DeCastro
Jose Maria DeCastro

EXHIBIT 4

# EXHIBIT A

## CERTIFIED DOCKET

Stephens County District Court • Case No. CM-2025-00530

### STATE OF OKLAHOMA vs. DECASTRO, JOSE M.

Criminal Misdemeanor | Date Filed: December 10, 2025 | Amount Owed: $792.00 (as of March 16, 2026)

### OFFENSE OR CAUSE

1   LOITER IN / INJURE / MOLEST MOTOR VEHICLE / JOY RIDE  [21 O.S. § 1787]

2   LOITER IN / INJURE / MOLEST MOTOR VEHICLE / JOY RIDE  [21 O.S. § 1787]

3   LOITER IN / INJURE / MOLEST MOTOR VEHICLE / JOY RIDE  [21 O.S. § 1787]

### PARTIES INVOLVED

| | |
|---|---|
| Defendant | DECASTRO, JOSE M. — Los Angeles, CA |
| District Attorney | JACOBSMA, DAN |
| Attorney | PRO SE |
| Arresting Officer | SMITH, SUZANNAH |
| Agency | DUNCAN POLICE DEPARTMENT — Duncan, OK |
| Judge | HIXON, CARRIE — Stephens County District Court |

### CASE ENTRIES

| DATE | DESCRIPTION |
|---|---|
| 12/10/2025 | Information Filed (Count 1) |
| 12/10/2025 | Multiple Count Filed (Count 2) |
| 12/10/2025 | Multiple Count Filed (Count 3) |
| 12/10/2025 | Probable Cause Affidavit Filed |
| 12/10/2025 | Misdemeanor Warrant Issued |
| 12/26/2025 | Letter from Attorney General Gentner Drummond |
| 12/31/2025 | Affidavit of Heather Chandler Filed |
| 01/06/2026 | Notice of Good-Faith Efforts to Confirm Prosecuting Authority and Contact Information |
| 01/09/2026 | Defendant's Motion for Franks Hearing |
| 01/20/2026 | Defendant's Supplemental Motion for Franks Hearing |
| 01/20/2026 | Defendant's Motion to Disqualify Prosecutor |
| 01/20/2026 | Defendant's Motion for Judicial Recusal |
| 02/13/2026 | Defendant's Motion to Deem Motions Confessed |

| TOTAL OWED | $792.00  (as of March 16, 2026) |
|---|---|

Source: Oklahoma District Court Records — https://odcr.com/detail?court=069-&casekey=069-CM++2500530  |  Retrieved March 16, 2026

EXHIBIT 4