Jose Maria DeCastro

5350 Wilshire Blvd., P.O. Box 36143

Los Angeles, CA 90036

chille@situationcreator.com

April 29, 2026

**FILED**

MAY U 4 2026

JOAN KANE, CLERK
U.S. DIST. COURT WESTERN DIST. OKLA
BY_____, DEPUTY

Clerk of Court

United States District Court

Western District of Oklahoma

William J. Holloway, Jr. United States Courthouse

200 NW 4th Street, Suite 1210

Oklahoma City, OK 73102

**Re:   DeCastro v. City of Duncan, et al., Case No. 5:26-cv-00027-G**

**Plaintiff's Opposition to Defendant Suzannah Smith's Motion to Dismiss**

Dear Clerk:

Enclosed for filing in the above-referenced matter is Plaintiff's Opposition to Defendant
Suzannah Smith's Motion to Dismiss (Doc. 24). I am proceeding pro se in this matter.

I have enclosed a self-addressed stamped envelope for return of a file-stamped copy of the
Opposition for my records.

A copy of the Opposition has been served on counsel for Defendant Smith by electronic mail, as
reflected in the Certificate of Service attached to the Opposition.

Thank you for your attention to this matter.

Respectfully,

/s/ Jose M. DeCastro

Jose Maria DeCastro, Pro Se

**Enclosures:**

  1. Plaintiff's Opposition to Defendant Suzannah Smith's Motion to Dismiss

  2. Self-addressed stamped envelope

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

JOSE MARIA DeCASTRO,

      Plaintiff,

v.                                                  Case No. 5:26-cv-00027-G

CITY OF DUNCAN, OKLAHOMA, et al.,

      Defendants.

## PLAINTIFF'S OPPOSITION TO DEFENDANT

## SUZANNAH SMITH'S MOTION TO DISMISS

Plaintiff Jose Maria DeCastro, appearing pro se, respectfully submits this Opposition to Defendant Suzannah Smith's Motion to Dismiss (Doc. 24) and states as follows.

## INTRODUCTION

Defendant frames this case as a premature malicious prosecution claim that fails for want of favorable termination. That framing is wrong. The First Amended Complaint pleads a Fourth Amendment claim under *Manuel v. City of Joliet*, 580 U.S. 357 (2017), which recognizes a Section 1983 cause of action for unreasonable seizure imposed through legal process. *Manuel* does not require favorable termination of the underlying state proceeding. The seizure-through-process theory accrues at the time of the constitutionally defective process itself.

Defendant also argues that Sergeant Smith did not personally participate in the alleged violations because she signed a probable cause affidavit and nothing more. That argument cannot be

reconciled with Defendant's own concession that under *Franks v. Delaware*, 438 U.S. 154 (1978), an officer who knowingly or recklessly makes false statements in a probable cause affidavit, or omits material facts, is the proximate cause of the resulting seizure. Defendant cannot have it both ways. Either signing the affidavit is too attenuated to support liability, or it is the very conduct *Franks* holds actionable. It cannot be both.

These are the doctrinal pillars of Defendant's motion. Both fail. The motion should be denied.

For ease of reference, this Opposition addresses the issues in the following order: (I) the official-capacity claim; (II) the Manuel reframing of Count II; (III) the Franks standard, the defective affidavit, and the limits of magistrate approval; (IV) personal participation and the Franks contradiction; (V) probable cause and the Nieves exception; (VI) First Amendment retaliation; (VII) Younger abstention and the bad-faith exception; (VIII) Ex parte Young; (IX) service; and (X) qualified immunity.

## BACKGROUND

On August 22, 2025, Austin Garrett Reeves was arrested in Washington, Oklahoma, for stealing a firearm from a deputy's vehicle. Seventeen days later, on September 8, 2025, Plaintiff documented AR-15 rifles left unsecured in the back seats of unattended Duncan Police Department patrol vehicles in a publicly accessible parking lot. After verifying that the vehicle doors were locked, Plaintiff entered the police station and met with Deputy Chief/Major David Woods to report the safety hazard. Woods acknowledged the unsecured rifles but defended the department's practice. Plaintiff was permitted to leave the station as a free man. Sergeant Smith was personally present in the Duncan Police Department on September 8.

Plaintiff was not detained or arrested at the time, despite the presence of multiple on-duty Duncan officers who were aware of his conduct. That outcome is consistent with the absence of any apparent basis for immediate enforcement. The 92-day delay before the Department even sought a warrant is strong circumstantial evidence consistent with post-hoc enforcement rather than ordinary law enforcement activity, and with an effort to punish and deter Plaintiff's ongoing investigations into police misconduct.

Sergeant Smith executed her probable cause affidavit on September 9, 2025. Ninety-two days later — long after Plaintiff had left Oklahoma — a state court judge issued an arrest warrant based solely on that affidavit. The arrest warrant remains active and continues to restrict Plaintiff's liberty.

Plaintiff has filed a Motion for a Franks Hearing, a Supplemental Franks Motion, a recusal motion, and a proposed order in the state criminal case. As of the filing of this Opposition, the state court has not ruled on the recusal motion or the proposed order, both of which have been pending for over three months. Plaintiff filed the operative First Amended Complaint on March 30, 2026.

## ARGUMENT

## I.  THE OFFICIAL-CAPACITY CLAIM AGAINST SERGEANT SMITH SHOULD BE DISMISSED AS REDUNDANT.

Plaintiff does not oppose dismissal of the official-capacity claim against Sergeant Smith. Because the City of Duncan is already named as a defendant, the official-capacity claim against Sergeant Smith is duplicative of the claim against the municipality and may be dismissed as redundant. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 n.4 (10th Cir. 1998). Plaintiff proceeds

against Sergeant Smith solely in her individual capacity for damages. The remainder of this Opposition addresses Defendant's arguments directed at the individual-capacity claim.

## II. COUNT II IS A FOURTH AMENDMENT SEIZURE-THROUGH-PROCESS CLAIM UNDER MANUEL, NOT A COMMON-LAW MALICIOUS PROSECUTION CLAIM.

Defendant's central premise is that Count II is a malicious prosecution claim that cannot accrue until the state proceeding terminates in Plaintiff's favor. (Doc. 24 at 19-20). That premise is wrong as a matter of governing Supreme Court law.

In *Manuel v. City of Joliet*, 580 U.S. 357 (2017), the Supreme Court squarely held that the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process. *Id.* at 367. The Court rejected the theory that legal process automatically insulates a seizure from Fourth Amendment scrutiny. Where the legal process itself is constitutionally deficient, the seizure remains unreasonable, and Section 1983 supplies a remedy. *Id.* at 369.

*Manuel* also recognized that this Fourth Amendment claim is distinct from common-law malicious prosecution. *Id.* at 366. A Section 1983 Fourth Amendment claim does not import every element of common-law malicious prosecution. The claim accrues when the plaintiff is seized pursuant to legal process that lacks probable cause, not when the underlying state case terminates. *Id.* at 369-70.

The seizure here is ongoing. The arrest warrant issued on the basis of Sergeant Smith's affidavit remains active. It restricts Plaintiff's liberty and movement at this very moment. The Fourth Amendment violation is not historical; it is present and continuing. An active arrest warrant constitutes an ongoing restraint on liberty that cannot be remedied after the fact. That fact bears

on every doctrinal question in this case, including the irreparable-injury inquiry under the Younger bad-faith exception and the propriety of prospective relief under Ex parte Young.

Plaintiff's First Amended Complaint pleads exactly this claim. Count II alleges that Sergeant Smith's defective probable cause affidavit caused the issuance of an arrest warrant that imposes a continuing Fourth Amendment seizure on Plaintiff. The constitutional violation is the use of legal process unsupported by probable cause to effect a seizure.

Defendant's brief never cites *Manuel*. It treats Count II as if *Manuel* were never decided. The Court should reject this framing and apply governing Supreme Court law.

## III. THE FRANKS STANDARD, THE DEFECTIVE AFFIDAVIT, AND THE LIMITS OF MAGISTRATE APPROVAL.

### A. The Franks Standard.

An affidavit supporting an arrest warrant violates the Fourth Amendment when the plaintiff demonstrates: (1) a false statement or material omission in the affidavit; (2) made knowingly and intentionally, or with reckless disregard for the truth; and (3) materiality, meaning the false statement or omission was necessary to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). *Franks* applies equally to material omissions as to affirmative false statements. *Stewart v. Donges*, 915 F.2d 572, 582 (10th Cir. 1990); *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014). At the Rule 12(b)(6) stage, Plaintiff need only plausibly allege these elements. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

The FAC pleads each element. First, the affidavit characterizes Plaintiff's conduct using statutory terms — molesting — that the conduct described does not satisfy, and omits material context including the lot's public accessibility, the open and visible nature of Plaintiff's documentation,

the absence of any entry or attempt to drive a vehicle, the fact that the documentation revealed unsecured AR-15 rifles in police vehicles, and the fact that Plaintiff immediately entered the station to brief the Deputy Chief on the safety hazard before being permitted to leave as a free man. Second, Sergeant Smith was personally present in the Duncan Police Department on September 8 and had access to the records of Plaintiff's meeting with Deputy Chief Woods. Reckless disregard for the truth under Franks is satisfied where an officer deliberately avoids exculpatory information she could readily verify. With Plaintiff's superior-officer briefing recorded and accessible in her own building, the means of verification were readily available and easily verifiable. Whether Sergeant Smith's omissions reflect knowing falsity, reckless disregard, or deliberate avoidance of facts readily available to her is a factual question grounded in concrete circumstances; it cannot be resolved at the Rule 12(b)(6) stage. Third, the omissions are material because their inclusion would have prevented any reasonable magistrate from finding probable cause under 21 O.S. Section 1787, as set forth in Section V below.

### B.    The Affidavit Is the Initiating Act of a Continuing Constitutional Violation.

Defendant repeatedly characterizes Sergeant Smith's role as having only signed an affidavit. (Doc. 24 at 5, 17). That framing minimizes the legal significance of the act. The probable cause affidavit is the document that caused a state judge to issue an arrest warrant. The arrest warrant is the legal process that effects the seizure. The affidavit is therefore the initiating act of every downstream consequence.

Under *Franks*, an officer who submits a probable cause affidavit containing knowingly or recklessly false statements, or omitting material facts that would defeat probable cause, is the proximate cause of the resulting seizure. The independent decisions of a judge or prosecutor do

7

not break the chain of causation when the officer's affidavit is itself constitutionally defective. *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996); *Stonecipher*, 759 F.3d at 1142.

### C.  A Magistrate's Approval Does Not Immunize a Defective Affidavit.

Defendant repeatedly invokes Judge Hixon's review and approval of the affidavit as if it were dispositive. (Doc. 24 at 12, 19). It is not. The independent intermediary doctrine does not insulate an officer from liability when the affidavit submitted to the magistrate is itself constitutionally defective. *Franks* exists precisely to address that situation. *Pierce v. Gilchrist*, 359 F.3d 1279, 1295-96 (10th Cir. 2004) (an officer who submits false or misleading information to obtain a warrant cannot rely on the issuing judge's approval to break the chain of causation).

The reasoning is straightforward. A magistrate's review is only as reliable as the information presented. When the officer presents distorted information, the resulting warrant is no more reliable than the affidavit, and the officer remains the proximate cause of the seizure. *Stonecipher*, 759 F.3d at 1142. To hold otherwise would render *Franks* meaningless. Every defective affidavit, by definition, has been approved by a judge — that is what makes it the predicate for a warrant in the first place. The presence of a judicial signature is the occasion for a *Franks* challenge, not a defense to one.

## IV.  SIGNING THE AFFIDAVIT IS PERSONAL PARTICIPATION; DEFENDANT'S OWN BRIEF CONCEDES IT.

Defendant argues that Sergeant Smith did not personally participate in any constitutional violation because she only signed an affidavit. (Doc. 24 at 16-17). That argument cannot be reconciled with Defendant's separate argument under *Franks*.

The logical structure of Defendant's brief admits liability on these facts:

7

8

*Premise One.* Defendant concedes that under *Franks*, an officer who knowingly or recklessly makes false statements in an affidavit, or omits material facts, is the proximate cause of the resulting seizure. (Doc. 24 at 20).

*Premise Two.* The act at issue in any *Franks* claim is the affidavit itself.

*Premise Three.* Sergeant Smith performed that act. (Doc. 24 at 2, 5).

*Conclusion.* The conduct that triggers *Franks* liability is the same conduct Defendant claims is too minimal to support personal participation.

Defendant cannot have it both ways. If signing the affidavit is too attenuated to count as participation, then *Franks* is unavailable as a theory of liability. If *Franks* is the controlling framework, then the affidavit is the actionable conduct, and Sergeant Smith plainly performed it. Tenth Circuit law treats the probable cause affidavit as the constitutionally significant act. *Bruner v. Baker*, 506 F.3d 1021, 1026 (10th Cir. 2007); *Stonecipher*, 759 F.3d at 1142.

## V.  THE AFFIDAVIT DOES NOT ESTABLISH PROBABLE CAUSE; ALTERNATIVELY, THE NIEVES EXCEPTION APPLIES.

### A.  The Conduct Described in the Affidavit Does Not Satisfy the Statute.

Probable cause is judged on an objective standard, considering all the information that was or should have been included in the affidavit. *Stonecipher*, 759 F.3d at 1141. The conduct described in Sergeant Smith's affidavit does not satisfy the elements of 21 O.S. Section 1787.

Section 1787 prohibits loitering in or upon any automobile or motor vehicle, defacing or injuring a vehicle, molesting, driving, or attempting to drive a vehicle for joyriding or any other purpose, and manipulating or meddling with any machinery or appliances thereof without the consent of

the owner. The statute targets joyriding and tampering with a vehicle's mechanical systems. It does not criminalize photography in a public parking lot. To the extent any of these terms are arguably ambiguous as applied to outdoor documentation of a vehicle's exterior, the Rule of Lenity requires that ambiguity be resolved in Plaintiff's favor.

Sergeant Smith's affidavit describes Plaintiff photographing through windows and pulling on door handles without gaining entry. (Doc. 24, Ex. 2). Photographing a vehicle from outside is not loitering in or upon it. Photographing a vehicle does not deface or injure it. Pulling on a locked door handle without gaining entry is not driving, attempting to drive, or manipulating the vehicle's machinery or appliances. None of the statutory elements is met by the conduct described.

The State's application of Section 1787 to this conduct stretches the statute beyond its ordinary meaning. Section 1787 is a vehicle-tampering and joyriding provision. Its operative verbs — loiter, deface, injure, molest, drive, attempt to drive, manipulate, meddle — describe physical interference with a vehicle's body or mechanical systems. Outdoor photography of a vehicle's exterior, and contact with an exterior door handle that does not open the vehicle, falls outside that range of conduct on any natural reading. The interpretive stretch required to fit Plaintiff's documentation within Section 1787 is itself probative. It reinforces the inference that the statute is being used as a tool to justify enforcement rather than applied as written.

**B.    The Omitted Facts Are Material; Their Inclusion Would Have Defeated Probable Cause.**

The probable cause inquiry also asks what a reasonable magistrate would have found had material facts not been omitted. *Stonecipher*, 759 F.3d at 1142. The affidavit omits four categories of facts that any reasonable observer would have provided to the issuing judge:

First, that the parking lot was accessible to the public.

Second, that Plaintiff conducted his photography openly and in plain view.

Third, that Plaintiff did not enter, attempt to enter, or attempt to drive any vehicle.

Fourth, that Plaintiff's documentation revealed unsecured firearms inside police vehicles, a serious public safety concern that explained both the purpose and the journalistic character of the documentation.

These omissions are not peripheral. They go to the heart of every element of Section 1787. With these facts disclosed, the affidavit would not have described conduct meeting any element of the offense — no loitering in or upon any vehicle, no defacing or injury, no driving or attempting to drive, and no manipulation of machinery or appliances. Inclusion of the omitted facts would have prevented a neutral magistrate from finding probable cause. That is the definition of materiality under *Franks*.

The Tenth Circuit applies a corrected-affidavit analysis to material-omission claims. The reviewing court mentally inserts the omitted facts into the affidavit and asks whether probable cause would still exist on that corrected version. *Stonecipher*, 759 F.3d at 1142. Performing that exercise here yields a clear answer. A corrected affidavit would describe a journalist photographing the exterior of police vehicles in a publicly accessible parking lot, in plain view, without entering or attempting to enter any vehicle, in the course of documenting unsecured AR-15 rifles in the back seats of patrol units. The corrected affidavit would further reflect that,

immediately after the documentation, Plaintiff entered the police station and briefed Deputy Chief Woods on the safety hazard, and was permitted to leave as a free man. No reasonable magistrate could find probable cause on that record under a vehicle-tampering and joyriding statute. Probable cause disappears as a matter of law when the omitted facts are restored. The omitted facts also negate any reasonable inference that Plaintiff acted with the intent the statute requires. That outcome alone establishes materiality and sustains the *Franks* claim at the pleading stage.

More fundamentally, even accepting every factual assertion in Sergeant Smith's affidavit as true and drawing every reasonable inference in the State's favor, the conduct described does not satisfy any element of Section 1787 as a matter of law. Photographing a vehicle from outside is not loitering in or upon the vehicle. Photographing does not deface or injure. Pulling on a door handle that does not open the vehicle is not driving, attempting to drive, or manipulating machinery or appliances. The statutory mismatch is not a matter of competing interpretations. No reasonable construction of Section 1787 consistent with the statute's text and purpose reaches outdoor photography of a police vehicle's exterior. Probable cause therefore fails on the face of the affidavit, before any consideration of omissions. Even if the Court were to view the statutory question as close, dismissal remains inappropriate where the determination depends on the full factual context of the conduct and the omitted information.

## C.    The Nieves Exception Independently Sustains the First Amendment Claim.

To the extent Defendant invokes *Nieves v. Bartlett*, 587 U.S. 391 (2019), to argue that probable cause defeats the First Amendment retaliation claim, *Nieves* itself recognizes a critical exception. Where officers have probable cause but typically exercise their discretion not to enforce the law

against the same conduct, the probable-cause bar does not apply. *Id.* at 406-07. The exception is the law of selective enforcement against similarly situated individuals.

The Duncan Police Department parking lot is regularly accessed by members of the public for ordinary lawful purposes: delivery drivers, citizens reporting incidents, individuals visiting employees, and members of the press documenting the building's exterior and visible interior elements. Plaintiff is informed and believes that none of these similarly situated individuals has been charged under Section 1787 for conduct comparable to that described in Sergeant Smith's affidavit — namely, walking through the lot, looking through vehicle windows, or contacting an exterior door handle. Plaintiff's allegations therefore establish differential treatment compared to ordinary citizens engaging in similar conduct. That is the textbook trigger for the *Nieves* exception. The First Amendment claim is independently sustainable on this ground regardless of how the Court resolves probable cause on the merits.

## VI.   THE FIRST AMENDMENT RETALIATION CLAIM IS PROPERLY PLEADED.

Plaintiff is engaged in newsgathering for a YouTube channel, DeleteLawZ, with more than 690,000 subscribers and millions of views, openly documenting and reporting on police conduct and other matters of public concern. On September 8, 2025, Plaintiff was in Duncan, Oklahoma, engaged in that protected newsgathering activity when he documented unsecured AR-15 rifles left in the back seats of unattended Duncan Police Department patrol vehicles in a publicly accessible parking lot.

The First Amendment retaliation claim is not dependent on a completed arrest. It is grounded in the retaliatory initiation and continuation of legal process — specifically, Sergeant Smith's defective probable cause affidavit and the still-active arrest warrant — to punish and deter

Plaintiff's protected activity. This states a viable claim under settled Tenth Circuit and Supreme Court precedent.

## A.    Documenting Police Conduct in a Public Place Is Core Protected Activity.

The Tenth Circuit has squarely held that the First Amendment protects the right to film and photograph police officers and their equipment performing their duties in public. *Irizarry v. Yehia*, 38 F.4th 1282, 1292 (10th Cir. 2022). Plaintiff's open, visible documentation of unsecured service weapons in a publicly accessible police parking lot constitutes protected newsgathering and core political speech on a matter of obvious public safety and police accountability. *See also Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011); *Fields v. City of Philadelphia*, 862 F.3d 353 (3d Cir. 2017). Defendant attempts to confine *Irizarry* to traffic stops. (Doc. 24 at 18, 22). That reading does not match the case. *Irizarry* rests on the broader principle that documentation of police activity in public is core First Amendment expression. The newsgathering function does not stop at the boundary of a parking lot, particularly one accessible to the public.

## B.    Retaliatory Motive Is Plausibly Alleged — and the Injury Is Ongoing and Concrete.

At the Rule 12(b)(6) stage, Plaintiff need only plead facts that plausibly support a retaliatory motive. The FAC does so through the temporal proximity between Plaintiff's protected documentation on September 8, 2025, and Sergeant Smith's affidavit the very next day; the statutory mismatch — invoking a decades-old joyriding and vehicle-tampering statute against open, non-intrusive photography and minor exterior door-handle contact in a public lot; the 92-day delay before seeking a warrant, only after Plaintiff had left the State and continued his

investigations; the material omissions Sergeant Smith could have easily verified in her own building; and the procedural irregularities that followed.

These facts, taken together and with all reasonable inferences drawn in Plaintiff's favor, plausibly support the inference that the warrant was issued and maintained in response to Plaintiff's protected speech. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019); *Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018). Defendant's argument that Sergeant Smith could not have been motivated by protected activity because she did not know of it (Doc. 24 at 13, 18) requires the Court to credit Defendant's factual assertions over Plaintiff's well-pleaded allegations, contrary to *Twombly*, 550 U.S. at 555-56. Knowledge of protected activity can be reasonably inferred from visible conduct, officer presence at the scene, and the immediate enforcement response, not only from explicit statements of journalistic intent.

The injury is ongoing and concrete. Because of the active warrant, Plaintiff — a California resident — cannot safely return to Oklahoma to continue reporting on the unsecured-firearms incident or any other matters of public concern in the State. The warrant has subjected Plaintiff to public stigmatization across his audience of hundreds of thousands and damaged his professional standing as a journalist. These are continuing First Amendment injuries that flow directly from the retaliatory use of legal process. *Manuel v. City of Joliet*, 580 U.S. 357 (2017).

## C.   The Nieves Exception Independently Supports the First Amendment Claim.

To the extent Defendant invokes *Nieves v. Bartlett* to argue that probable cause defeats the First Amendment retaliation claim, *Nieves* itself recognizes a critical exception. Where officers have probable cause but typically exercise their discretion not to enforce the law against the same conduct, the probable-cause bar does not apply. *Id.* at 406-07. That principle extends to

discretionary decisions to initiate charges or seek warrants. *See Gonzalez v. Trevino*, 602 U.S. 653 (2024) (objective evidence of novel or near-total non-enforcement satisfies the exception; virtually identical named comparators are not required).

Here, the Duncan Police Department parking lot is regularly used by members of the public for lawful purposes, including visitors, delivery drivers, and others present in the ordinary course. Plaintiff alleges that no comparable prosecutions are known under 21 O.S. Section 1787 for non-tampering conduct of the type described in the affidavit — open photography and minor exterior door-handle contact. The near-total absence of enforcement of this decades-old joyriding and vehicle-tampering statute for such routine, non-intrusive activity constitutes objective evidence of atypical, selective enforcement. *See Gonzalez*.

The 92-day delay before seeking a warrant, combined with the choice of a statute that fits poorly with the conduct described, further supports a reasonable inference of retaliatory motive. Taken together, these facts plausibly allege selective enforcement sufficient to satisfy the Nieves exception at the pleading stage. This provides an independent basis for the First Amendment claim regardless of how the Court ultimately resolves probable cause on the merits.

## VII. YOUNGER ABSTENTION DOES NOT BAR THIS CASE BECAUSE THE BAD-FAITH EXCEPTION APPLIES.

Plaintiff acknowledges that the three *Younger* elements are facially met. The dispositive question is whether the bad-faith exception applies. *Phelps v. Hamilton*, 59 F.3d 1058, 1064 (10th Cir. 1995) (*Phelps I*). It does, on the facts pleaded.

The bad-faith exception is fact-driven. The Court should reject Defendant's invitation to treat bad faith as a label and instead examine the chronology pleaded in the FAC, fact by fact, with the inferences each supports.

### A.    The Chronology Reflects Targeted Enforcement, Reactive Authorization, and Procedural Obstruction.

*September 8, 2025.* Plaintiff documents unsecured AR-15 rifles in unattended Duncan Police Department patrol vehicles in a publicly accessible parking lot. He immediately enters the station and meets with Deputy Chief Woods to report the safety hazard, and is permitted to leave as a free man. This conduct is the catalyst for everything that follows.

*September 9, 2025.* Sergeant Smith executes a probable cause affidavit characterizing Plaintiff's documentation as molesting vehicles under Section 1787. The decision to charge under a statute facially aimed at joyriding and vehicle tampering — not investigative photography — is consistent with reaching for any available statute to justify enforcement after the fact.

*December 10, 2025.* The Department finally seeks an arrest warrant — 92 days after the September 9 affidavit, and after Plaintiff has departed Oklahoma. The 92-day delay between Sergeant Smith's affidavit and the warrant request — during which Plaintiff continued making public records requests and pressing for accountability — is itself strong evidence of bad faith. A delay of this length is atypical for ordinary probable cause determinations and is consistent with reactive, post-hoc enforcement, particularly where officers had previously allowed the suspect to walk free and the warrant issued only after the suspect had left the State and continued investigating.

*January 9, 2026.* Plaintiff files a Motion for a Franks Hearing in state court, challenging the truthfulness of the affidavit.

*January 20, 2026.* Plaintiff files a Supplemental Franks Motion. On that same day, an Attorney General appointment letter for District Attorney Dan Jacobsma — who is the District 3 District Attorney prosecuting outside his own district in Stephens County — bears a January 20, 2026 postmark. The temporal coincidence is consistent with the prosecution scrambling to reconstruct its authorization chain in direct response to Plaintiff's challenge.

*February 13, 2026.* Plaintiff files a Proposed Order on his pending recusal motion.

*Through April 28, 2026.* The state court has not ruled on the recusal motion or the proposed order. Pending motions remain unaddressed for over three months. The absence of rulings on these motions has prevented Plaintiff from challenging the integrity of the forum and from advancing his federal constitutional claims.

Taken together, these facts support an inference of targeted enforcement, retaliatory use of process, and procedural obstruction. More specifically, they support the plausible inference that the prosecution was initiated not to enforce Section 1787 against vehicle tampering, but to deter and punish Plaintiff's documentation of police misconduct. The mismatch between the conduct and the statute, combined with the delayed and reactive initiation of charges and the procedural obstruction that has followed, supports the inference that this prosecution is not a good-faith enforcement of law but a use of law as a tool. This is not merely a weak prosecution; it is a prosecution that fits poorly with the statute it invokes. The combination of an ongoing

constitutional injury and a forum that will not rule constitutes irreparable harm sufficient to satisfy the bad-faith exception at the pleading stage.

## B.    These Facts Are Concrete, Not Conclusory.

The Central District of California rejected Plaintiff's earlier bad-faith showing as conclusory. Defendant relies heavily on that ruling. (Doc. 24 at 11). But the FAC has been amended to plead concrete facts: dated documents, specific procedural irregularities, and the Jacobsma authorization issue. These are not labels. They are pleaded facts, supported by the record.

The first *Phelps* factor asks whether the prosecution was undertaken with no reasonable hope of success. The conduct described in the affidavit does not satisfy any element of Section 1787 as a matter of law, as set forth in Section V above. A prosecution that lacks a reasonable likelihood of success under the statute as applied satisfies the first *Phelps* factor at the pleading stage.

The second *Phelps* factor asks whether the prosecution was motivated by retaliation for protected conduct. The chronology supports that inference: protected investigative documentation precedes the affidavit by three months; the affidavit reaches for a vehicle-tampering statute that does not fit the conduct; the postmark on the Jacobsma authorization letter coincides exactly with the day Plaintiff filed his Supplemental Franks Motion; and the state court has not ruled on the recusal motion for over three months. *Phelps I*, 59 F.3d at 1066. Plaintiff need not prove these factors at the pleading stage; he need only allege them plausibly. He has done so.

## C.    Defendant's Reliance on Aurelio Is Misplaced.

Defendant cites *Aurelio v. Mullin*, No. 24-1120, 2024 WL 4404239 (10th Cir. Oct. 4, 2024), for the proposition that a five-year delay did not establish extraordinary circumstances. (Doc. 24 at 9 n.1). *Aurelio* is inapposite. It addressed a post-conviction motion in a closed criminal case where

the petitioner was in custody under a final judgment. Plaintiff here is pre-trial. His motions are fully briefed. The unaddressed motions go to the integrity of the forum (recusal) and the truthfulness of the predicate affidavit (Franks). The state court's silence prevents Plaintiff from advancing those issues. The two situations are not comparable.

## VIII. EX PARTE YOUNG SUPPORTS PROSPECTIVE INJUNCTIVE RELIEF.

To the extent the FAC seeks prospective injunctive relief, *Ex parte Young*, 209 U.S. 123 (1908), provides the doctrinal basis. The principal Ex parte Young claim is directed at Defendant Jacobsma in his official capacity as the prosecuting authority responsible for the ongoing seizure. As applied to Sergeant Smith in her individual capacity, the operative claim is for damages, and *Ex parte Young* is not the central doctrinal hook. Plaintiff raises the doctrine here only to confirm that *Younger* abstention does not foreclose all forms of equitable remedy where bad-faith prosecution is alleged.

## IX.  ANY DEFECT IN SERVICE IS CURABLE.

Defendant's service argument warrants brief response. The Court has already granted Plaintiff an extension until June 15, 2026, to effectuate service. (Doc. 19). Sergeant Smith has actual notice of this action and the operative First Amended Complaint, having received a copy via certified mail on or about March 30, 2026. (Doc. 24 at 15). Any defect in the form of service is curable within the time the Court has already allowed. Plaintiff will request issuance of a new summons directed to Sergeant Smith and effect proper service well before the June 15 deadline. Dismissal on this ground would be inconsistent with Rule 4(m) and the extension already granted by Doc. 19.

## X.  SERGEANT SMITH IS NOT ENTITLED TO QUALIFIED IMMUNITY.

### A.   The Constitutional Violations Are Adequately Pleaded.

The FAC pleads that Sergeant Smith executed a probable cause affidavit that omitted material facts and described conduct not satisfying the elements of Section 1787, that the affidavit caused the issuance of a warrant, and that the warrant imposes a continuing Fourth Amendment seizure on Plaintiff. The FAC also pleads that the prosecution was initiated in retaliation for protected investigative activity. These are constitutional violations under settled Fourth and First Amendment law.

### B.   The Law Was Clearly Established, Beginning with Franks.

The clearly-established prong is satisfied here, despite Defendant's invocation of *Mullenix v. Luna*'s high-level-of-specificity requirement. (Doc. 24 at 22).

For the Fourth Amendment claim, *Franks v. Delaware* has clearly established since 1978 that an officer violates the Fourth Amendment by submitting a probable cause affidavit containing knowingly or recklessly false statements or omitting material facts. 438 U.S. at 155-56. That is precisely the conduct alleged here. There is no Fourth Amendment principle in this Circuit more clearly established than *Franks*. *Bruner*, 506 F.3d at 1026; *Stonecipher*, 759 F.3d at 1142; *Pierce v. Gilchrist*, 359 F.3d at 1295-96.

A reasonable officer in Sergeant Smith's position would have understood that submitting an affidavit which omits facts that negate probable cause — particularly facts she could verify by walking down the hall — violates the Fourth Amendment. That is the precise rule of *Franks*, applied in this Circuit for nearly fifty years.

It is also clearly established that an officer cannot avoid *Franks* liability by deliberately staying blind to exculpatory information she could readily verify. Reckless disregard for the truth

includes deliberate avoidance, and qualified immunity does not protect an officer who chooses not to consult readily-available facts that would defeat probable cause. Where, as here, the means of verification — the superior officer, the building, the internal records — were immediately accessible to the affiant, the choice not to look is itself the conduct *Franks* prohibits. The clearly-established prong is satisfied.

For the First Amendment claim, *Irizarry v. Yehia* clearly established in 2022 that filming police officers performing their duties in public is protected First Amendment activity. 38 F.4th at 1292. The Tenth Circuit drew on a body of out-of-circuit precedent recognizing the same right. Defendant's attempt to confine *Irizarry* to traffic stops finds no support in the opinion's reasoning, which rests on the broader First Amendment interest in documenting government activity.

### C. Defendant Improperly Argues Facts Outside the Pleadings.

Defendant repeatedly asserts that Sergeant Smith did not know Plaintiff was engaged in journalism, that there is no further indication in the record that Plaintiff identified himself as press, and that Sergeant Smith documented specific, observable conduct in a non-retaliatory way. (Doc. 24 at 13, 18, 23). These are factual assertions outside the pleadings. They are inappropriate at the Rule 12(b)(6) stage, which requires the Court to accept Plaintiff's well-pleaded allegations as true. *Twombly*, 550 U.S. at 555-56. The Court should disregard Defendant's factual contentions and resolve the motion on the FAC alone.

### D. Qualified Immunity Cannot Be Resolved on the Pleadings Where Material Facts Are Disputed.

22

Even assuming the Court considers the qualified immunity inquiry close, it cannot be resolved at the Rule 12(b)(6) stage where the analysis depends on disputed facts. Whether Sergeant Smith executed the affidavit knowingly or with reckless disregard for the truth, what facts she knew at the time, and whether her treatment of Plaintiff differs from her treatment of similarly situated individuals — these are factual questions not amenable to resolution on the pleadings. Resolving them requires inquiry into internal communications and administrative records uniquely within Defendant's possession; dismissal at this stage would constitute premature adjudication of contested and material facts. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). The proper course at this stage is to deny the motion and allow the factual record to develop.

## CONCLUSION

The motion treats this case as a malicious prosecution claim where it is a *Manuel* claim. It asserts no personal participation while simultaneously conceding *Franks* liability. It claims probable cause where the conduct described does not satisfy the statute and the omitted facts would have defeated it. It invokes *Younger* abstention while ignoring concrete facts of targeted enforcement, reactive authorization, procedural obstruction, and a state court that has not ruled on a recusal motion in over three months. None of these arguments supports dismissal.

At minimum, Defendant's motion raises factual disputes that cannot be resolved on the pleadings. Whether the omissions in the affidavit were material, whether the prosecution was undertaken in bad faith, whether retaliatory motive is properly inferred, and whether Sergeant Smith's actions reflect selective enforcement — all of these turn on facts that require discovery. Resolution of probable cause, intent, and knowledge depends on facts uniquely within Defendant's possession: what Sergeant Smith knew, what was discussed within the Duncan Police Department in the three-month interval between the September 8 incident and the

22

23

affidavit, and how Section 1787 has been enforced against similarly situated individuals. Plaintiff cannot reach those facts without discovery. Even if the Court finds the probable cause question close, dismissal is inappropriate where the determination depends on the full factual context of the affidavit and the omitted information. Rule 12(b)(6) is not the proper stage to resolve these questions. The Court must accept Plaintiff's well-pleaded allegations as true and draw all reasonable inferences in his favor. *Twombly*, 550 U.S. at 555-56.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Suzannah Smith's Motion to Dismiss in its entirety, except as to the official-capacity claim, which Plaintiff does not oppose dismissing as redundant. To the extent the Court identifies any technical defect in service, Plaintiff requests leave to cure that defect within the time already granted by this Court's April 15, 2026 Order (Doc. 19).

DATED: April 28, 2026.

Respectfully submitted,

/s/ Jose M. DeCastro

Jose Maria DeCastro, Pro Se

5350 Wilshire Blvd., P.O. Box 36143

Los Angeles, CA 90036

Email: chille@situationcreator.com

## CERTIFICATE OF SERVICE

23

24

I hereby certify that on April 28, 2026, I caused a true and correct copy of the foregoing

Plaintiff's Opposition to Defendant Suzannah Smith's Motion to Dismiss to be served on the

following counsel of record by U.S. Mail and email:

Robert S. Lafferrandre, OBA #11897

Jeffrey C. Hendrickson, OBA #32798

Jessica James Curtis, OBA #35140

Pierce Couch Hendrickson Baysinger & Green, L.L.P.

1109 North Francis Avenue

Oklahoma City, Oklahoma 73106

rlafferrandre@piercecouch.com

jhendrickson@piercecouch.com

jjamescurtis@piercecouch.com

Counsel for Defendant Suzannah Smith

/s/ Jose M. DeCastro

Jose Maria DeCastro, Pro Se

24