# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOSE MARIA DeCASTRO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF DUNCAN, OKLAHOMA; | ) | |
| SUZANNAHE SMITH, in her individual | ) | |
| and official capacities; | ) | |
| CONNOR NEWMAN, in his individual | ) | |
| and official capacities; | ) | |
| WILLIAM FITZHUGH, in his individual | ) | Case No. 5:26-cv-00027 |
| and official capacities; | ) | |
| BRIAN ATTAWAY, in his individual and | ) | |
| official capacities; | ) | |
| DAVID HAMMOND, in his individual | ) | |
| and official capacities; | ) | |
| DAN JACOBSMA, in his individual and | ) | |
| official capacities; | ) | |
| DOES 1-10, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS

Defendant Suzannahe Smith, sued in her individual capacity[1], hereby respectfully submits this Reply in support of her Motion to Dismiss (Doc. No. 24). On the surface, Mr. DeCastro's Response seems comprehensive, but on closer examination it becomes clear that Mr. DeCastro misinterprets case law and uses flowery legal terms to cover up the fact

---

[1] Suzannahe Smith was originally named in both her individual and official capacity. However, Mr. DeCastro concedes in his Response that any official capacity claim against Sergeant Smith is redundant and should be dismissed.

that he has no claim. For the reasons explained below and in Sergeant Smith's opening

brief, the Amended Complaint should be dismissed.

As an initial matter, Sergeant Smith must point out that Mr. DeCastro's argument

that Sergeant Smith asks this Court to consider facts outside the pleadings is incorrect.

Sergeant Smith does not ask this Court to add facts to the record, but instead points to the

absence of facts that support Mr. DeCastro's claims. This is precisely the point of a Fed.

R. Civ. P. 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mr. DeCastro, by

contrast, introduces facts in his Response that do not appear in his Amended Complaint.

By way of example, he asserts that Sergeant Smith could have accessed records of Mr.

DeCastro's meeting with Major Wood and that no similarly situated individuals have been

prosecuted under 21 O.S. § 1787 for comparable conduct. (Doc. 25 at 6-7, 12, 15). Mr.

DeCastro cannot amend his Complaint through his Response. *Hayes v. Whitman,* 264 F.3d

1017, 1025 (10th Cir. 2001) (citing *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836

F.2d 173, 181 (3d Cir. 1988)). It is Mr. DeCastro's new factual assertions that must be

disregarded.

## I.    MR. DECASTRO STILL FAILS TO SHOW HOW THE BAD FAITH EXCEPTION TO *YOUNGER* APPLIES

Mr. DeCastro admits that all three *Younger* elements are met but still asserts that he

has properly plead that the bad faith exception applies. He has not. As discussed in Sergeant

Smith's underlying Motion, the bad faith exception is a narrow one and only applies in

cases in which a plaintiff can show satisfactory proof that such extraordinary circumstances

apply. *Phelps v. Hamilton ("Phelps I"),* 59 F.3d 1058, 1064 (10th Cir. 1995); *Phelps v.*

*Hamilton ("Phelps II"),* 122 F.3d 885, 890 (10th Cir. 1997). It is the plaintiff's "heavy burden" to overcome *Younger* abstention by setting forth "more than mere allegations of bad faith or harassment. *Phelps II*, 122 F.3d at 889-90. Mr. DeCastro must come forth with "additional, supplemental evidence" to demonstrate that the prosecution was motivated by bad faith. *Id.* He has not done so, and his Response does nothing to remedy that failure.

Mr. DeCastro continues to only rely on his allegations from the First Amended Complaint. Specifically, he claims that the 92-day delay, the statute used to charge him, and the "procedural irregularities" all support his conclusion that the bad faith exception applies. But he provides no actual evidence or other factual support for these claims. Even if this Court were to consider Mr. DeCastro's allegations alone as a sufficient initial showing, his arguments still fail on the merits of each factor required for bad faith. *Phelps II,* 122 F.3d at 889. Specifically, he fails to establish that the prosecution was frivolous or has no hope of success, nor does he establish that the prosecution was retaliation for protected conduct. *Id.*

On the first factor, whether the prosecution was frivolous or has no hope of success, Mr. DeCastro continues to argue that his conduct could not possibly satisfy the requirements of 21 O.S. § 1787. But his argument offers no authority for this narrow, and frankly incorrect, interpretation of 21 O.S. § 1787. Additionally, he does not provide any response as to why Judge Hixon's probable cause finding should be overturned. A judicial determination is entitled to significant weight, and Mr. DeCastro must offer concrete impeachment of it to establish bad faith. *Phelps I,* 59 F.3d at 1065-66. But, he offers none. He does not establish the first factor for the bad faith exemption.

On the second factor, retaliatory animus toward protected conduct, Mr. DeCastro argues that a retaliatory motive can be inferred from temporal proximity and the statutory mismatch. But Mr. DeCastro does not allege that Sergeant Smith knew he was a journalist, knew he had reported to Major Woods, or had any awareness of protected activity before she prepared the affidavit. He also does not allege that Judge Hixon had knowledge of these alleged events either. Again, his allegations are nothing more than his own inferences and beliefs. This is not enough to carry his burden.

Finally, Mr. DeCastro claims that *Younger* is inapplicable to Sergeant Smith as any claim against her is for damages. However, the Court should still at least stay any such claims due to the intertwined nature of the facts. Outright dismissal of the damages claim is also appropriate, however, because Mr. DeCastro fails on the merits of those claims as set forth below.

## II.    MR. DECASTRO STILL FAILS TO PLEAD ANY PLAUSIBLE 42 U.S.C. § 1983 AGAINST SERGEANT SMITH

Even ignoring the jurisdictional issues, Mr. DeCastro's Response does not cure the fundamental pleading deficiencies already discussed in Sergeant Smith's Motion to Dismiss. His allegations remain conclusory and insufficient to establish any cognizable claim against Sergeant Smith.

### A.  Mr. DeCastro Alleges No Facts to Support a Fourth Amendment Claim

Mr. DeCastro now tries to frame his Count II Fourth Amendment claim as both a "seizure through legal process claim," and a Fourth amendment claim based on *Franks v. Delaware*, 438 U.S. 154 (1978). His attempt to now turn his single Fourth Amendment

claim into two separate claims further illustrates the confusing nature of his Fourth Amendment claim. Sergeant Smith even stated in her underlying motion that it was difficult to even determine what kind of Fourth Amendment claim Mr. DeCastro intended to bring. Now that Mr. DeCastro has seemingly clarified his theories, it is clear any claim he believes he may can be disposed of at the onset as he was never seized.

"Violation of the Fourth Amendment requires an intentional acquisition of physical control" or in other works, a seizure of some kind. *Brower v. County of Inyo,* 489 U.S. 593, 596 (1989).  A seizure occurs for Fourth Amendment purposes when the government have, "by means of physical force or show of authority, ... in some way restrained the liberty of a citizen." *Terry v. Ohio,* 392 U.S. 1, 19, n. 16, (1968)). This means an individual must have been arrested, incarcerate or placed under the direct physical control of the state. *Becker v. Kroll*, 494 F.3d 904, 915 (10th Cir. 2007).  None of this has happened to Mr. DeCastro.

Mr. DeCastro urges this Court find that a seizure has occurred because the outstanding arrest warrant restricts his "liberty and movement." (Doc. 25, p. 5). Specifically, he claims the warrant limits his ability to travel to Oklahoma. (Doc. 16, ¶ 49). This theory of seizure has been rejected. The Tenth Circuit, in agreement with multiple other circuit courts, has refused to recognize claims of pre-arrest restrictions, such as restrictions on travel, as a Fourth Amendment seizure. *Becker,* 494 F.3d at 915–16 (collecting cases). Whatever restriction on travel that Mr. DeCastro now claims is a self-imposed one caused by his own actions. It is not caused by a show of force or government

authority. An unexecuted warrant does not seize anyone. Because no seizure has occurred, neither Fourth Amendment theory can survive.

Although the Court need not even go further in the analysis for either Fourth Amendment claim, Sergeant Smith addresses each theory in the alternative. As for Mr. DeCastro's "seizure through legal process" claim, his reliance on *Manuel v. City of Joliet*, 580 U.S. 357 (2017) is misplaced as he misreads the decision.  In *Manuel*, the plaintiff was arrested during a traffic stop after officers falsely claimed that pills found in his possession tested positive for ecstasy, even though the pills tested negative for this substance. *Id.* at 360. The plaintiff was brought before a judge for a probable cause determination, and the judge, relying solely on the officers' fabricated evidence, ordered him held pending trial. *Id.* at 361. The plaintiff then spent more than a month in custody before his charges were dismissed and he was released. *Id.* at 362-63. The Supreme Court ultimately held that the Fourth Amendment governed his pretrial detention claim because his physical custody was unsupported by any legitimate probable cause determination and the legal process initiating his further detention was itself constitutionally deficient, as it solely relied on the police's fabrications about the pills' content *Id.* at 368-69.

Mr. DeCastro is correct that *Manuel* does hold that the Fourth Amendment can govern a claim for pretrial detention after the legal process has started, if that legal process was deficient. (Doc. 25, p. 5). However, Mr. DeCastro tries to stretch *Manuel's* holding far beyond what it was meant to cover by claiming that the mere existence of an unexecuted arrest warrant constitutes an ongoing Fourth Amendment seizure, even if the person has

6

not been arrested or detained. Nothing in the Court's reasoning in *Manuel* supports Mr. DeCastro's "seizure through legal process" claim.

Mr. DeCastro now also seems to claim that Sergeant Smith's affidavit in and of itself violated the Fourth Amendment under *Franks v. Delaware*, 438 U.S. 154 (1978). Even ignoring the fact that such a claim still requires an actual seizure, this claim still fails as Mr. DeCastro has not plausibly alleged that Sergeant Smith made knowingly or recklessly false statements or material omissions. *Franks*, 438 U.S. at 155-56; *Kapinski v. City of Albuquerque,* 964 F.3d 900, 905 (10th Cir. 2020). Mr. DeCastro still has not shown that omitted information was material and would have negated probable cause, nor has he shown that Sergeant Smith was reckless in omitting the information. *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020).

Sergeant Smith has already addressed the lack of factual support for this claim in her underlying Motion and Mr. DeCastro's Response does nothing to change this. There are no facts alleged by Mr. DeCastro that show Sergeant Smith had any knowledge of the facts that Mr. DeCastro claims would have negated probable cause, such as his purpose for being in the lot or the fact that he was a "journalist." Mr. DeCastro now tries to establish reckless omission with allegations that Sergeant Smith was present in the police department building on September 8 and had theoretical "access" to records of Mr. DeCastro's meeting with Major Woods. But being in the same building and having theoretical access to internal records does not establish actual knowledge of what was said in a separate meeting with a different officer, much less reckless disregard for that information when preparing the

7

affidavit the following day. Mr. DeCastro has not pled facts to support any theory of liability under *Franks.*

### B. Mr. DeCastro Still Fails to State a First Amendment Retaliation Claim

Mr. DeCastro's Response does nothing to save his First Amendment claim either. Although Mr. DeCastro's response does not adequately address any of the required elements for First Amendment retaliation, his arguments regarding the retaliatory motive element are especially problematic. To plead a First Amendment retaliation claim, a plaintiff must allege facts showing that a defendant's "adverse action was substantially motivated as a response to [his] exercise of constitutionally protected conduct." *Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204, 1226 (10th Cir. 2020). To establish that element, the defendant in question must be aware of the protected activity. *See, e.g.*, *Underwood v. Bd. of Cnty. Comm'rs of Cnty. of Jefferson*, 611 F. Supp. 2d 1223, 1230 (W.D. Okla.), *appeal dismissed and remanded sub nom. Phillips v. Dale*, 356 F. App'x 163 (10th Cir. 2009) (noting, in the First Amendment retaliation for employee speech context, that knowledge of protected activity, with **close** temporal proximity to the adverse employment action **may** be enough to show causation). As already discussed, Mr. DeCastro alleges no facts that show Sergeant Smith knew Mr. DeCastro had identified himself as a journalist, knew he had reported to Major Woods, or knew of any prior protected activity that would motivate retaliation. His suggestion that the Court should infer retaliatory intent purely from the fact that Sergeant Smith was present in the building is too

abstract to satisfy the pleading standard and does not come close to establishing that retaliation was a substantial motivating factor in her decision to prepare the affidavit.

Mr. DeCastro's argument for the *Nieves v. Bartlett* exception to the probable cause bar on First Amendment retaliation claims is also unconvincing. "Although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests but typically exercise their discretion not to do so." *Nieves v. Bartlett*, 587 U.S. 391, 406 (2019). But for this exception to apply, a plaintiff must present "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id*. at 407. Mr. DeCastro provides no such evidence. His allegations that "no comparable prosecutions are known" and that there is a "near total absence of enforcement" of 21 O.S. § 1787" are nothing more that his own conclusions. This is not enough to plead that no comparative prosecutions exist.

Mr. DeCastro also does not actually provide "similarly situation individuals" for this Court to compare him to. Mr. DeCastro compares himself to visitors and delivery drivers, but there is no meaningful resemblance there. Those individuals are walking through the parking lot for an ordinary, lawful purpose. Mr. DeCastro walked into the parking lot with a recording device attached to a long pole. He placed this device on the windows to capture the interior of the car. He then pulled on the door handle of vehicles but failed to make entry. (Doc. 24-2). His behavior is not comparable to a visitor walking to the front door or a delivery driver delivering a package. Mr. DeCastro cannot plausibly allege that similarly situated individuals, those who have also approached multiple police

vehicles, pressed recording equipment against their windows, and pulled on their door handles, have routinely gone uncharged under 21 O.S. § 1787. He fails to identify any similar situated individuals for the purposes of the *Nieves* exception.  Mr. DeCastro's allegations fail to show how such an exception applies in this case.

Finally, Mr. DeCastro relies on 92-day delay for seeking a warrant in an attempt to further establish a retaliatory motive. However, again, as discussed in Sergeant Smith's underlying motion, she did not participate in any decision to file charges against him three months after the incident, nor did she take any action beyond the affidavit. She cannot be held individually liable for decisions made by others long after her involvement ended. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential element of any Section 1983 claim).

WHEREFORE, Defendant Sergeant Suzannahe Smith respectfully requests that this Court dismiss all claims against her, including the official capacity claim that Mr. DeCastro admits is redundant, and grant such other relief as the Court deems just and proper.

Respectfully submitted,

*s/ Jessica James Curtis*

Robert S. Lafferrandre, OBA #11897
Jeffrey C. Hendrickson, OBA #32798
Jessica James Curtis, OBA #35140
**PIERCE COUCH HENDRICKSON**
**BAYSINGER & GREEN, L.L.P.**
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2903

rlafferrandre@piercecouch.com
jhendrickson@piercecouch.com
jjamescurtis@piercecouch.com
*Attorneys for Defendant Suzannahe Smith*

## CERTIFICATE OF SERVICE

I certify that on the 18th day of May, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing and the transmittal of a Notice of Electronic Filing to all counsel who have entered an appearance in this action.

    *s/ Jessica James Curtis*
    Jessica James Curtis

I also hereby certified that on the 18th day of May, 2026, I served a true and correct copy of the attached document on all parties that are not registered for service via the CM/ECF system for filing, including those specified below, via U.S. mail:

***Pro Se Mr. DeCastro:***
Jose Maria DeCastro
5350 Wilshire Blvd.
P.O. Box 36143
Los Angeles, CA 90036
chille@situationcreator.com

    *s/ Jessica James Curtis*
    Jessica James Curtis

11